Katherine McBroom, CBN 223559
KAEDIAN LLP
280 S. Beverly Drive, Suite 209
Beverly Hills, CA 90212
Telephone: (310) 893-3372
Fax: (310) 935-0323
kmcbroom@kaedianllp.com

Attorney for Defendant
JONATHAN REDONDO-ROSALES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN REDONDO-ROSALES<br><br>Defendant. | CASE NO. CR 25-679-JLS<br><br>JONATHAN REDONDO-ROSALES' OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #3 TO EXCLUDE POST ASSAULT EVIDENCE<br><br>Hearing Date: October 10, 2025<br>Hearing Time: 8:30 a.m.<br>Trial Date: October 21,<br>Location: Courtroom of the Hon. Josephine L. Stanton |

Defendant Jonathan Redondo-Rosales, through his counsel of record, Katherine C. McBroom, hereby files his opposition to the government's Motion *in Limine* # 3 to exclude post-assault evidence. (Dkt. 34).

## I. INTRODCUTION

On August 2, 2025, Defendant Jonathan Redondo-Rosales ("Mr. Redondo-Rosales") attended a protest on Alameda Street in downtown Los Angeles. A number of Department of Homeland Security, Federal Protective Service Inspectors were guarding the entrance of the Edward R. Roybal Federal Building and the Metropolitan Detention Center. Mr. Redondo-Rosales came to the officers' attention when he stood in front of a vehicle which was attempting to turn onto Alameda Street from a driveway.

Instead of immediately stopping the car or backing up, the car rolled forward and Mr. Redondo-Rosales rolled onto the hood. When the car stopped, Mr. Redondo-Rosales slipped off the car, moved backwards, and was pursued by two officers. The government claims that, at that time, Mr. Redondo-Rosales intentionally struck officer Z.C. in the face. However, video evidence shows that officer Z.C. shoved Mr. Redondo-Rosales as he was moving backward, taking Mr. Redondo-Rosales off his feet and landing him onto his back on the concrete. Then, as Mr. Redondo-Rosales attempted to get to his feet, another officer tackled him from behind and took him to the ground a second time. As he was being pinned down by three officers, a fourth officer maced Mr. Redondo-Rosales in the face. Mr. Redondo-Rosales was then escorted to a detention area. He sustained injuries to this face, left shoulder, left arm, and the palm of his right hand.

The Government seeks to exclude at trial evidence of Mr. Redondo-Rosales' detention and arrest as irrelevant and unduly prejudicial. First, evidence of the detention and arrest is inextricably linked to the alleged assault, as they happened simultaneously, and is relevant to whether the assault actually occurred. The officers' acts of shoving, tackling, pinning, and macing Mr. Redondo-Rosales within nanoseconds of the alleged assault are relevant to officer credibility and tend to support the officers' motive to lie to justify their actions.

Notably, officers omitted facts surrounding the detention from their reports and failed to document Mr. Redondo-Rosales' injuries at all. The government wishes to follow suit by denying the jury an opportunity to evaluate relevant facts bearing on credibility and motive.

Second, the evidence at issue is not unduly prejudicial and will not unduly consume time or mislead the jury. The government claims the officers' actions in detaining and arresting Mr. Redondo-Rosales will garner undue sympathy and distract from the issue at hand. Not so. Evidence regarding the officers' detention of Mr. Redondo-Rosales bears directly on whether an assault occurred. The evidence is both probative and exculpatory, but not unduly prejudicial. As for undue time consumption or jury confusion, the government fails to point out that there is no real delineation or significant lag in time between the alleged assault and the detention of Mr. Redondo-Rosales. They are nearly simultaneous.

The issue to be decided is simple –whether Mr. Redondo-Rosales intentionally struck Z.C. resulting in his detention and arrest. The jury must necessarily view evidence of the detention and arrest to determine what actually occurred. Accordingly, the Court should deny the government's Motion *In Limine* No. 3.

## II. STATEMENT OF FACTS

On August 2, 2025, Mr. Redondo-Rosales was protesting on Alameda Street in front of the entrance to the Metropolitan Detention Center and the Edward R. Roybal Federal Building. At that time, several individuals were protesting the actions of the United States Immigration and Customs Enforcement (ICE) and Department of Homeland Security (DHS) in the Los Angeles area. Several DHS Federal Protective Services (FPS) Inspectors were positioned in front of the federal building, presumably to protect the federal buildings.

During the protest, Mr. Redondo-Rosales stood in front of a vehicle pulling out of a driveway onto the street.



**EX101**

The car rolled forward despite Mr. Redondo-Rosales standing in front of it. As the car slowly moved forward, Mr. Redondo-Rosales rolled onto the hood.

  

**EX102**  **EX103**  **EX104**

When the car stopped, Mr. Redondo-Rosales stumbled off the hood and moved backward. Two FPS inspectors ran toward him. As he moved backward, complaining witness Z.C. shoved Mr. Redondo-Rosales. The Government disputes that anyone shoved Mr. Redondo-Rosales.

 

**EX105**  **EX106**

Mr. Redondo-Rosales was shoved off his feet, into the air, and landed on his back onto the concrete. Thereafter, he was swarmed by three FPS Inspectors. As he attempted to get to his feet, one of the three inspectors grabbed Mr. Redondo-Rosales and flung him to the ground.

 

**EX107**                              **EX108**

Mr. Redondo-Rosales sustained injuries to his face, shoulder, arm, and the palm of his hand.

As Mr. Redondo-Rosales was being held down and handcuffed by three FPS inspectors, a fourth FPS inspector sprayed Mr. Redondo-Rosales in the face with mace.

 

EX109                              EX110

///
//
///
///
//
//

Mr. Redondo-Rosales was handcuffed, pulled to his feet, and escorted to a detention area.

 

**EX111**  **EX112**

Law enforcement did not, at any point, report or photograph the injuries Mr. Redondo-Rosales suffered as a result of their actions. (McBroom Decl., ¶9.)

Following the arrest, Z.C. provided a statement that Mr. Redondo-Rosales hit him in the face with a closed fist. (*Id.*, ¶8.) In its pretrial motions, the government has walked that back, stating that Mr. Redondo-Rosales "swatted" at officers. Z.C.'s lie regarding being punched in the face is indicative of the Z.C.'s and the other officers' motive to fabricate and avoid responsibility for the injuries they unnecessarily caused.

On August 5, 2025, Mr. Redondo Rosales appeared for his arraignment on a felony complaint. Pursuant to a court order, defense counsel, in lock up, photographed Mr. Redondo-Rosales' injuries. (*Id.*, ¶4.) He sustained injuries to his head, left shoulder, left arm, and right palm.

   

**EX113**  **EX114**  **EX115**  **EX116**

On August 15, 2025, the USAO filed a misdemeanor information against Mr. Redondo-Rosales alleging a violation of 18 U.S.C. § 111. (*Id.*, ¶ 10.) The USAO refuses to disclose whether it presented the case to a grand jury prior to filing the misdemeanor information. (*Id.*, ¶11.)

In its Motion *In Limine* No. 3, the USAO argues that evidence of Mr. Redondo-Rosales' "post-assault arrest" is inadmissible because it is irrelevant and more prejuidical than probative. The USAO is wrong.

### III. ARGUMENT

#### A. Evidence of Law Enforcement Officers Shoving, Tackling, Pinning, and Macing Mr. Redondo-Rosales is Relevant

Federal Rule of Evidence 401 permits the introduction of evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401 sets a very low threshold for admissibility in setting the bar at "any tendency," in order to allow the jury, and not the parties, to determine facts.

Further Rule of Evidence 404(b) permits admission of evidence to demonstrate motive, intent, and/or bias. *U.S. v. Rocha*, 533, F.2d 615, 616 (9th Cir. 1977). Evidence of excessive force by an officer is relevant to the officer's motive to lie or fabricate evidence in order to justify the force used. *See U.S. v. Gonzalez*, 906 F.3d 784, 792 (9th Cir. 2018) (a rational jury can infer from officers' actions that they tacitly agreed to use excessive force against the suspect and had a common motive to cover up and justify their use of force.)

Here, evidence of the officers' acts of violence when detaining Mr. Redondo-Rosales are critical to the jury's fair assessment of witness, including officer, credibility. The government claims that Mr. Redondo-Rosales intentionally struck FPS Inspector Z.C. while Z.C. was lawfully attempting to detain him. Evidence demonstrates otherwise – that FPS officers acted

unreasonably and with excessive force, thus establishing a motive for the officers to make misrepresentations. The fact that Z.C. falsely claimed in a report that he was punched in the face with a closed fist, that officers omitted the tactics used during the detention, and that officers failed to document Mr. Redondo-Rosales' injuries supports the defense's position. Certainly, the officer's misrepresentation that he was punched with a closed fist and his failure to document injuries and how the injuries were caused is directly relevant to credibility and fair game during trial.

There are several reasons an officer may fabricate charges against a suspect when he or she has used excessive force. These include creating a justification for the excessive force, deterring victims from filing misconduct complaints, establishing a false narrative with the suspect as the aggressor, and protecting him or herself from liability. The FPS officers here have an interest in justifying the actions they took and the injuries they inflicted upon Mr. Redondo-Rosales. The jury must be privy to evidence concerning the detention and arrest in order to fairly evaluate officer credibility.

### B. Evidence of Officers' Conduct in Detaining and Arresting Mr. Redondo-Rosales is Far More Probative than Prejudicial

The government argues that, even if evidence concerning the detention and arrest is relevant, it is nevertheless inadmissible pursuant to Federal Rule of Evidence 403 because it is unduly prejudicial, will confuse the issues, and will waste time.

First, the government is conflating evidence that is unduly prejudicial with evidence that is exculpatory. As described above, evidence that officers shoved, tackled, pinned, and maced Mr. Redondo-Rosales, causing injuries, "tends" to demonstrate that the officers have a motive to exaggerate and misrepresent the alleged assault. This evidence is not prejudicial, but rather, exculpatory and necessary for the jury's evaluation of the facts.

Second, the officers' detention and arrest of Mr. Redondo-Rosales occurs simultaneously with the alleged assault. The video evidence in this case is mere seconds long. Evidence shows an officer shoving Mr. Redondo-Rosales at the same time he is reported to have struck Z.C. The evidence is inextricably linked. Accordingly, there will be no undue waste of time, confusion of the issues, or misleading the jury.

Third, the government's argument that evidence of events "after" the assault is a "ploy" by defense to elicit sympathy is inaccurate and not well taken. The government's concern that the jury may feel sympathy for Mr. Redondo-Rosales "after" the arrest suggests there is a significant period of time or some clear delineation between the act and the detention. There is not. The officers were annoyed at Mr. Redondo-Rosales, lost their cool, and used unreasonable, excessive force to detain Mr. Redondo-Rosales.  They jury must absolutely be privy to the circumstances of the detention and arrest to determine whether the "assault" alleged to have occurred only moments before occurred.

## IV. CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court deny the government's motion.

DATED: September 23, 2025

/s/
_____
Katherine McBroom
Attorney for JONATHAN REDONDO-ROSALES

**DECLARATION OF KATHERINE McBROOM**

1. I am an attorney licensed to practice law in California State and Federal courts, am a member of the CJA Panel for the Central District of California and I have been appointed to represent Jonathan Redondo-Rosales.

2. On August 2, 2025, Mr. Redondo-Rosales was arrested in Los Angeles.

3. On August 5, 2025, I was appointed to represent Mr. Redondo-Rosales. That day, Mr. Redondo-Rosales appeared for his arraignment on a felony complaint.

4. On August 5, 2025, during this initial appearance, I met with Mr. Redondo-Rosales in lock up and, pursuant to a Court order, photographed the injuries he sustained to his head, left shoulder, left arm, and right palm. Exhibits 113-116 are photographs taken by me.

5. Exhibits 101, 105, 109-112 are stills created from video provided by the defense to the government. The defense has disclosed the name and contact information for the individuals who took these videos.

6. Exhibits 102-104 and 106-108 are stills created from a video produced by the government. The government has not disclosed the name and contact information for the individual who took the video.

7. I have reviewed all discovery produced by the government thus far in this matter.

8. In his statement concerning the incident, complaining witness Z.C. claims that Mr. Redondo-Rosales hit him with a closed fist.

9. None of the reports related to this matter, including Z.C.'s statement, including a description of the tactics used to detain and arrest Mr. Redondo-Rosales, nor do they document or described the injuries suffered by Mr. Redondo-Rosales.

10. On August 15, 2025, the USAO filed a misdemeanor information against Mr. Redondo-Rosales alleging a violation of 18 U.S.C. § 111.

11. The USAO refuses to disclose whether it presented the case to a grand jury prior to filing the misdemeanor information.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 25th day of September 2025, at Beverly Hills, California.

                                        _____/s/_____
                                        KATHERINE McBROOM