1  Katherine McBroom, CBN 223559
2  KAEDIAN LLP
   242 26th Street, Unit C
3  Santa Monica, Ca 90402
4  kmcbroom@kaedianllp.com
   Telephone: (310) 666-5198
5

6  Attorney for Defendant
7  JONATHAN REDONDO-ROSALES

8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10

11

12  UNITED STATES OF AMERICA,         CASE NO.  CR 25-679-JLS
13            Plaintiff,
                                      DEFENDANT JONATHAN REDONDO-
14       v.                           ROSALES' MOTION TO COMPEL
                                      BRADY DISCOVERY
15  JONATHAN REDONDO-ROSALES
16                                    Hearing Date: January 23, 2026
17            Defendant.              Hearing Time: 8:30 a.m.
                                      Trial Date: February 3, 2026
18                                    Location: Courtroom of the Hon. Josephine
19                                    L. Stanton
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 3

I.    INTRODUCTION ........................................................................................... 3

II.   RELEVANT FACTS ....................................................................................... 4

   A.   FPS Inspector Z.C.'s Criminal History And Attempts to Conceal His Criminal History Are *Brady* and *Henthorn* Materials are Relevant to the Elements of the Charge, The Defense Of Self-Defense, The Jury Instructions and Pending Defense Motions ........................................... 9

   B.   The Personnel Files of FPS Witnesses Must Be Disclosed ................................................ 10

   C.   The Government Should be Required to Produce Complete Personnel Files for Inspectors Z.C., William Terpstra, and Brian Murberg ................................................ 11

III.   CONCLUSION ............................................................................................... 12

Defendant, Jonathan Redondo-Rosales, by and through his counsel of record, Katherine C. McBroom, hereby moves this Court to compel the government to immediately produce *Brady/Henthorn* discovery as follows:

- Complete personnel files for Department of Homeland Security Federal Protection Service Inspector Z.C., who claims to be the victim of a battery in this matter, limited to his criminal history, his representations to DHS and/or FPS concerning his criminal history or lack thereof, complaints of false reporting, and use of excessive force.

- The identities of individuals in the United States Attorney's Office to whom Inspector Z.C. made misrepresentations concerning his criminal history.

- Complete personnel files of Department of Homeland Security Federal Protection Service Inspectors Eric Murberg and William Terpstra, limited to complaints, investigations of, and/or disciplinary measures relating to false reporting and use of excessive force.

- Any and all complaints, whether by civilians or law enforcement, alleging false reporting by Department of Homeland Security Federal Protection Service Inspectors Z.C., Eric Murberg, and William Terpstra.

- Any and all complaints, whether by civilians or law enforcement, alleging false reporting by Department of Homeland Security Federal Protection Service Inspectors Z.C., Eric Murberg, and William Terpstra.

- Any and all disciplinary actions suffered by Department of Homeland Security Federal Protection Service Inspectors Z.C., Eric Murberg, and William Terpstra for false reporting.

- The number of times since January 2025, Department of Homeland Security Federal Protection Service Inspectors Z.C., Eric Murberg, and William Terpstra have filed Use of Force Reports.

1     This Motion is based on the government's failure to timely produce *Brady* and

2  *Henthorn* materials.

3     DATED: January 5, 2026

4                                                    _____
                                                              /s/

5                                                    Katherine McBroom
                                                     Attorney for JONATHAN
                                                     REDONDO-ROSALES

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On August 2, 2025, Defendant Jonathan Redondo-Rosales ("Mr. Redondo-Rosales") was arrested outside of the Metropolitan Detention Center in Los Angeles based on Department of Homeland Security ("DHS") Federal Protection Service ("FPS") Inspector Z.C.'s allegations of assault. Inspector Z.C. claims that Mr. Redondo-Rosales struck him in the face with a closed fist. Video evidence demonstrates otherwise. In fact, video evidence confirms that, after an unmarked FPS vehicle struck Mr. Redondo-Rosales, Inspector Z.C. pursued Mr. Redondo-Rosales, shoving him to the pavement. Thereafter, as Mr. Redondo-Rosales attempted to get to his feet, FPS Inspector William Terpstra tackled Mr. Redondo-Rosales from behind, violently slamming him  into the pavement. Then, as multiple officers pinned Mr. Redondo-Rosales to the ground, FPS Inspector Eric Murberg pepper sprayed Mr. Redondo-Rosales in the face. Mr. Redondo-Rosales suffered multiple injuries. Following the arrest, Inspectors Z.C., Terpstra, and Murberg filed Officer Use of Force reports and gave recorded statements to justify their acts of excessive force.

On October 27, 2025, the defense learned, independently, that complaining witness, Inspector Z.C., has a criminal history, including a 2021 assault conviction. Additionally, the defense learned that FPS, Inspector Z.C.'s employer, claims to be unaware of his criminal history and that Inspector Z.C. concealed his criminal history from the government when interviewed by the United States Attorney's Office ("USAO") in a related case where he alleged assaulted by a protestor.

The defense has repeatedly requested *Brady* and *Henthorn* materials related to Inspectors Z.C., Terpstra, and Murberg. Specifically, the defense requested complete personnel records, complaints for excessive force and/or false reporting, and disciplinary actions suffered for excessive force and/or false reporting for all three officers. The defense further requested the number of Officer Use of Force reports filed by each officer since January 2025. Finally, as to Inspector Z.C, individually, the

defense requested the identities of the individuals at the USAO to whom Inspector Z.C. made misrepresentations about his criminal history as well as discovery related to his misrepresentations to FPS in the course of this investigation and in order to secure employment with FPS. The government refuses to provide the requested discovery on the basis that it has complied with is duties under *Brady* or *Henthorn*.

## II.    RELEVANT FACTS

On August 2, 2025, Mr. Redondo-Rosales and Ashleigh Brown ("Ms. Brown") were arrested by Department of Homeland Security ("DHS"), Federal Protective Services Inspectors ("FPSs") on Alameda Street in front of the entrance to the Edward Roybal Federal Building. FPS Inspector Z.C., the alleged victim, claims that both Mr. Redondo-Rosales and Ms. Brown intentionally struck him. On August 4, 2025, in case 2:25-mj-04835, Mr. Redondo-Rosales and Ms. Brown were charged as co-Defendants, each charged with felony violations of 18 U.S.C. § 111(a)(1). Both were arraigned on August 5, 2025.

On August 15, 2025, the government filed an Information against Mr. Redondo-Rosales alleging a misdemeanor violation of 18 U.S.C. § 111(a)(1). And on August 26, 2025, the government filed a separate Information against Ms. Brown alleging a misdemeanor violation of 18 U.S.C. § 111(a)(1) in Case No. 2:25-cr-00701. The government dismissed the case against Ms. Brown on October 28, 2025. Mr. Redondo-Rosales' matter is scheduled for trial on February 3, 2026.

Defense counsel has made numerous requests for *Brady* and *Henthorn* materials concerning the following witnesses: DHS FPS Inspectors Z.C., Eric Murberg, and William Terpstra. Mr. Redondo-Rosales claims these officers were not acting lawfully before and during the alleged incident and used excessive force in apprehending him, causing injury. Video evidence first shows Mr. Redondo-Rosales being struck by an FPS unmarked vehicle while he stands in front of the vehicle on the street. After the car strikes Mr. Redondo-Rosales, multiple officers, including Inspector Z.C., rush him. As he backs away from the officers, Inspector Z.C. shoves Mr. Redondo-Rosales

causing him to fall to the ground. During this encounter, a hat which Mr. Redondo-Rosales holds in his left hand makes contact with Inspector Z.C., who is wearing a helmet, face shield, and protective gear.  When Mr. Redondo-Rosales attempted to get back on his feet, Inspector Terpstra bear hugged Mr. Redondo-Rosales from behind and threw him to the ground a second time causing the side of Mr. Redondo-Rosales' head to slam into the pavement. Thereafter, as multiple officers pinned Mr. Redondo-Rosales to the ground, Inspector Murberg pepper sprayed Mr. Redondo-Rosales in this face.

Mr. Redondo-Rosales sustained multiple injuries consistent with the officers' use of excessive force. Each officer filed an Officer Use of Force report following the incident claiming that Mr. Redondo-Rosales' assault upon Inspector Z.C. led to his violent takedown and detention. Video evidence shows otherwise.

On October 23, 2025, the defense requested, via email, *Brady* and *Henthorn* discovery related to DHS FPS Inspectors Z.C., Eric Murberg, and William Terpstra. Specifically, defense counsel requested:

- Any and all complaints (whether by civilians or law enforcement) alleging excess force, regardless of the outcome;

- Any and all complaints (whether by civilians or law enforcement) alleging false reporting regardless of the outcome.

- Any and all acts of moral turpitude including arrests for misdemeanor acts of moral turpitude.

- Any and all complaints and/or write ups for over billing and/or over reporting work hours.

- Any disciplinary actions suffered for use of excessive force.

- Any disciplinary actions suffered for false reporting.

- Any disciplinary actions suffered for overbilling/ over reporting time.

- The number of times since January 2025 until the present, each has filed an Officers Use of Force Report.

On October 27, 2025, Special AUSA Robert Quealy responded as follows: "The government does not have any Brady or Henthorn materials responsive to your request for our current intended witnesses." The defense responded, via email, inquiring as to what steps the government took to confirm that none of the materials requested exist.

The same day, October 27, 2025, the defense learned, independently, that complaining witness FPS Inspector Z.C. has a criminal history including:

> (1) a June 17, 2021 conviction for harassment in violation of Pennsylvania Statute § 18.2709(a)(1)[1], which falls within the criminal chapter for Assault[2];

> (2) a August 31, 2014 arrest for disorderly conduct, in violation of Florida Statute § 509.143; and

> (3) a November 4, 2013 conviction for driving under the influence, in violation of Florida Statute § 316193(1).

Additionally, on October 28, 2025, the defense learned that Inspector Z.C. lied to the government concerning his criminal history. In the matter of *United States v. Ashliegh Brown*, Case No. 2:25-cr-00701-FMO, the government filed a non-opposition to Ms. Brown's motion to compel the complete personnel files of the involved officers, including Inspector Z.C. (Docket 87), and a declaration by Assistant United States Attorney Clifford Mpare in support thereof. Mr. Mpare's declaration states:

> (1) On or about September 30, 2025, Mr. Mpare's "colleagues at the USAO" asked Inspector Z.C. "candid questions" in anticipation of calling him at trial."

---

[1] "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(a)(1).

[2] See Chapter 27, Assault https://www.legis.state.pa.us/WU01/LI/LI/CT/HTM/18/00.027.001.000..HTM (last accessed on November 22, 2025).

Inspector Z.C. disclosed his 2013 DUI conviction and his 2014 arrest for disorderly conduct only.

(2) On October 14, 2025, the government filed a declaration, pursuant to Judge Olguin's Order, stating that the government had complied with its *Henthorn* obligations and had no information to disclose.

(3) On October 26, 2025, Mr. Mpare's colleagues spoke with Inspector Z.C. who confirmed that the information relating to the 2021 assault conviction "appeared to refer to him."

(4) The FPS Attorney, Cecelia Green, claims that FPS had no knowledge of Inspector Z.C.'s 2021 assault conviction and hence did not disclose it.

Based on AUSA's Mpare's declaration, it appears that, in addition to lying to unidentified individuals at the USAO during trial preparation, Inspector Z.C. concealed his criminal record from DHS and FPS when seeking employment and during the investigation of the Ashleigh Brown matter.

Accordingly, on October 30, 2025, the defense sent an email following up on the October 27, 2025 request that the government explain the steps taken to verify that the government did not have any information to disclose pursuant to *Brady* or *Henthorn*, including misconduct and acts of moral turpitude. The government responded that it would take several days to respond.

On November 5, 2025, Special AUSA Quealy emailed defense counsel that, since informing the defense of the lack of *Henthorn* materials, he learned that Inspector Z.C. has a criminal record, that the government no longer intends to call Inspector Z.C. as a witness, and the government would be "providing a more detailed response to [defense's] outstanding questions later today." The same day, defense counsel informed Special AUSA Quealy that she would be calling Inspector Z.C. as a witness and requested information as to whether Inspector Z.C. disclosed his criminal record to DHS and renewed her request for materials responsive to the October 23, 2025 discovery demand. Special AUSA Quealy responded, "We have nothing more to

1  say than what has been disclosed in the public record in <u>United States v. Ashleigh</u>

2  <u>Brown</u>, 2:25-cr-00701, Dkt. 87."

3      The government is well aware of the defense's position in this case: that

4  Inspectors Z.C., Eric Murberg, and William Terpstra were not acting within their

5  lawful duties and used excessive force, and, after the fact, accused Mr. Redondo-

6  Rosales of assault in order to justify their misconduct.

7      The fact that Inspector Z.C. lied to the USAO and concealed his criminal

8  history from his employer, FPS, is relevant to his credibility.  Accordingly, on

9  November 6, 2025, in addition to the materials requested in defense counsel's October

10  23, 2025 email, defense counsel requested the personnel files of Inspectors Z.C., Eric

11  Murberg, William Terpstra; the names of the "colleagues" referenced in AUSA

12  Mpare's declaration; and information concerning any federal agents to whom

13  Inspector Z.C. misrepresented his criminal history, including the agent whose affidavit

14  was attached to the Complaint in this matter, Agent Thomas Smith.  The government

15  has not produced responsive materials and maintains that is has complied with it

16  *Brady* and *Henthorn* obligations.

17      On December 30, 2025, the defense emailed Special AUSA Quealy to meet and

18  confer concerning outstanding discovery. The Government reiterated that they have

19  complied with discovery obligations.

20  **III.    ARGUMENT**

21      Mr. Redondo-Rosales' right to this material information stems from the Due

22  Process Clause of the Fourteenth Amendment, and has been analyzed by Courts

23  applying *Brady*, *Giglio*, and its progeny, and incorporated into, and expanded upon

24  by, Federal Rule of Criminal Procedure 16.

25

26

27

28

1
2
3

**A.    FPS Inspector Z.C.'s Criminal History And Attempts to Conceal His Criminal History Are *Brady* and *Henthorn* Materials and are Relevant to the Elements of the Charge, The Defense Of Self-Defense, The Jury Instructions and Pending Defense Motions**

4
5
6
7
8
9
10
11

"The Brady rule is based on the requirement of due process." *United States v. Bagley*, 473 U.S. 667, 675 (1985). "Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Id.* "Impeachment evidence . . . is evidence favorable to an accused . . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule of *Brady*." *Id*. at 677.

12
13
14
15
16
17

When the defense requests materials of testifying officers, the government must "disclose information favorable to the defense that meets the appropriate standard of materiality." *Henthorn*, 931 F.2d at 31 (quoting *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984)). "If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation." *Id.*

18
19
20
21
22
23
24
25
26
27
28

Here, the fact that the government does not intend to call the complaining witness at trial does not relieve the government of their obligations under *Brady* and *Henthorn*. In their Motion in Limine #2 (Dkt. 33) , the government requests an order precluding Mr. Redondo-Rosales from raising a self-defense claim.  And in their Motion in Limine #1 (Dkt. 32), they seek to admit Mr. Redondo-Rosales' criminal history to demonstrate his propensity for violence should he claim self-defense or argue that any touching was unintentional.  To be clear, the government wants to preclude Mr. Redondo-Rosales from asserting self-defense against a law enforcement officer with an assault conviction which he concealed from FPS and the USAO. Now they seek to remove this witness from their case altogether to skirt discovery obligations.

1    Mr. Redondo-Rosales is entitled to learn the identities of the individuals at the

2  USAO (referenced in AUSA Mpare's declaration) to whom Inspector Z.C. made

3  misrepresentations. These are clearly impeachment witnesses who can attest that,

4  during an active investigation of Mr. Redondo-Rosales' former co-defendant

5  involving the same charge, Inspector Z.C. failed to disclose that he recently suffered

6  an assault conviction. Further, Mr. Redondo-Rosales is entitled to learn whether

7  Inspector Z.C. misrepresented his criminal history to FPS when seeking employment

8  and/or during the course of this investigation. Not only is Inspector Z.C.'s criminal

9  history *Brady* and *Henthorn* material, his history of committing assault as well as his

10  dishonesty concerning the prior assault directly supports multiple defense theories.

11  Issues of  self-defense and excessive force are at play in this case. Information

12  concerning Inspector Z.C.'s recent criminal assault conviction and his recent efforts to

13  conceal the assault conviction are relevant to those issues.

14       **B.    The Personnel File of FPS Inspector Z.C. Must Be Disclosed**

15       In addition to his criminal record, the government should have produced

16  Inspector Z.C.'s complete personnel file. Defense counsel and the Court should have

17  had an opportunity to review any information FPS has about Inspector Z.C.'s assault

18  history, as well as the agency's knowledge about Inspector's Z.C.'s performance

19  while on probation or supervised release (if applicable). Further, the absence of

20  information about Inspector Z.C.'s criminal record in his personnel file is *Brady*

21  evidence. For instance, if FPS did not know about Z.C.'s criminal history, any

22  concealment of his arrest and conviction history would be evidence of dishonesty and

23  thus have impeachment value. If Inspector Z.C. minimized or left out information

24  about his arrests or convictions, that, too, could be *Brady*.

25

26

27

28

### C.    The Government Should be Required to Produce Complete Personnel Files for Inspectors Z.C., William Terpstra, and Brian Murberg

The government's affirmative obligation to learn of *Brady* evidence extends to "information known to other agents of the government" of which the prosecutor did "not know but could have learned," including "information held by subordinates such as investigating police officers." *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019). Furthermore, the prosecution is presumed and "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). A *Brady* violation occurs "when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor," and an agency's *Brady* violation will be imputed to the prosecution). *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam). The government's *Brady* obligations are broader pre-verdict than on appeal. *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) ("[T]he retrospective definition of materiality is appropriate only in the context of appellate review; thus, trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial.") (citing United States v. Safavian, 233 F.R.D. 12, 16 (D.D.C. 2005) ("The question before trial is not whether the government thinks that disclosure of the information or evidence . . . might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed.")) (other citations omitted).

Here, the recorded statements of all three officers as well as their use of force reports are contradicted by video evidence. Accordingly, the defense seeks discovery concerning false reporting and use of excessive force related to these three officers.

The government seeks to skirt their *Brady/Henthorn* obligations by simply eliminating Inspector Z.C. from their case in chief, and claims, without basis, that all *Brady/Henthorn* materials have been disclosed. This is wrong.  Inspector Z.C. is the

1  alleged victim. The defense has uncovered evidence that Inspector Z.C. lied to federal

2  agents about his criminal history.  This is felonious conduct.18 U.S.C. § 1001.

3  Accordingly, it is discoverable. *See* Fed. R. Evid. 608; *U.S. v. Price*, 556 F.3d 900 913

4  (9th Cir. 2009)( "Rule 608(b) permits impeachment . . . by specific acts that have not

5  resulted in a criminal conviction. . . Under Rule 608(b), 'specific instances' of a

6  witness's prior conduct *may* be admissible 'in the discretion of the court' for purposes

7  of impeachment in order to show a witness's 'character for truthfulness or

8  untruthfulness.'"); *U.S. v. Bruce*, 984 F.3d 884, 896-97 (9th Cir. 2021) (government

9  cannot avoid *Brady* discovery obligations to disclose evidence favorable to the

10  defense by not calling a witness at trial).

11      At this point, the government has abused any right to independently review

12  personnel files and determine what constitutes *Brady* or *Henthorn* material subject to

13  disclosure. The Court should therefore require the government to immediately

14  produce the complete personnel files of all three FPS officers. Only then can the

15  defense be confident that the government has not withheld other discoverable

16  evidence before trial.

17  **IV.    CONCLUSION**

18      For the foregoing reasons, Mr. Redondo-Rosales requests that the Court compel

19  the government to produce: (1) the identities of the individuals at the USAO,

20  referenced in AUSA Mpare's declaration in the related matter, to whom Inspector

21  Z.C. made misrepresentations concerning his criminal history during trial preparation

22  in the related case; (2) discovery related to Inspector Z.C. misrepresentations to FPS

23  concerning his criminal history including to secure employment; and (3) discovery

24  related to whether Inspector Z.C. made misrepresentations to any federal agent,

25  including with FPS, concerning his criminal history.

26

27

28

1    Additionally, the defense requests the Court order the personnel files of

2    Inspectors Z.C., Terpstra, and Murberg be produced to the Court for an *in camera*

3    review for material relating to complaints, investigations of, and/or disciplinary

4    measures relating to false reporting and use of excessive force.

5

6    DATED: January 8, 2026

7                                                    _____
                                                              */s/*
                                                     KATHERINE McBROOM
8                                                    Attorney for JONATHAN
                                                     REDONDO-ROSALES

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KATHERINE McBROOM

1.  I am an attorney licensed to practice law in California State and Federal courts, am a member of the CJA Panel for the Central District of California and I have been appointed to represent Defendant Jonathan Redondo-Rosales ("Mr. Redondo-Rosales").

2.  On August 2, 2025, Mr. Redondo-Rosales and Ashleigh Brown ("Ms. Brown") were arrested by Department of Homeland Security ("DHS"), Federal Protective Services Inspectors ("FPSs") on Alameda Street in front of the entrance to the Edward Roybal Federal Building. FPS Inspector Z.C., the alleged victim, claims that both Mr. Redondo-Rosales and Ms. Brown intentionally struck him.

3.  On August 4, 2025, in case 2:25-mj-04835, Mr. Redondo-Rosales and Ms. Brown were charged as co-Defendants, each charged with felony violations of 18 U.S.C. § 111(a)(1). Both were arraigned on August 5, 2025.

4.  On August 15, 2025, the government filed an Information against Mr. Redondo-Rosales alleging a misdemeanor violation of 18 U.S.C. § 111(a)(1).

5.  And on August 26, 2025, the government filed a separate Information against Ms. Brown alleging a misdemeanor violation of 18 U.S.C. § 111(a)(1) in Case No. 2:25-cr-00701. The government dismissed the case against Ms. Brown on October 28, 2025.

6.  Mr. Redondo-Rosales' matter is scheduled for trial on February 3, 2026.

7.  I have made numerous requests for *Brady* and *Henthorn* materials concerning the following witnesses: DHS FPS Inspectors Z.C., Eric Murberg, and William Terpstra. The defense maintains these officers were not acting lawfully before and during the alleged incident and used excessive force in apprehending Mr. Redondo-Rosales, causing injury.

8.  Video evidence shows Mr. Redondo-Rosales being struck by an FPS unmarked vehicle while he stands in front of the vehicle on the street.  After the car strikes Mr. Redondo-Rosales, multiple officers, including Inspector Z.C., rush him.  As he backs away from the officers, Inspector Z.C. shoves Mr. Redondo-Rosales causing him to fall

to the ground. During this encounter, a hat which Mr. Redondo-Rosales holds in his left hand makes contact with Inspector Z.C., who is wearing a helmet, face shield, and protective gear. When Mr. Redondo-Rosales attempted to get back on his feet, Inspector Terpstra bear hugged Mr. Redondo-Rosales from behind and threw him to the ground a second time causing the side of Mr. Redondo-Rosales' head to slam into the pavement. Thereafter, as multiple officers pinned Mr. Redondo-Rosales to the ground, Inspector Murberg pepper sprayed Mr. Redondo-Rosales in this face. Lodged with the Court as Exhibits A and B are true and correct copies of videos recorded by Stephen Nunez, an eyewitness at the scene.

9.  Mr. Redondo-Rosales sustained multiple injuries consistent with the officers' use of excessive force.

10. Each officer filed an Officer Use of Force report following the incident claiming that Mr. Redondo-Rosales' assault upon Inspector Z.C. led to his violent takedown and detention. Video evidence shows otherwise.

11. On October 23, 2025, I requested, via email, *Brady* and *Henthorn* discovery related to DHS FPS Inspectors Z.C., Eric Murberg, and William Terpstra. Specifically, I requested:

- Any and all complaints (whether by civilians or law enforcement) alleging excess force, regardless of the outcome;

- Any and all complaints (whether by civilians or law enforcement) alleging false reporting regardless of the outcome.

- Any and all acts of moral turpitude including arrests for misdemeanor acts of moral turpitude.

- Any and all complaints and/or write ups for over billing and/or over reporting work hours.

- Any disciplinary actions suffered for use of excessive force.

- Any disciplinary actions suffered for false reporting.

- Any disciplinary actions suffered for overbilling/ over reporting time.

1    - The number of times since January 2025 until the present, each has filed an
2         Officers Use of Force Report.
3    Attached here as Exhibit C is a true and correct copy of the defense's October 23, 2025
4    discovery request.

5    12. On October 27, 2025, Special AUSA Robert Quealy responded as follows: "The
6    government does not have any Brady or Henthorn materials responsive to your request
7    for our current intended witnesses." I, via email, inquired as to what steps the
8    government took to confirm that none of the materials requested exist.  Attached as
9    Exhibit D is a true and correct copy of the October 27, 2025 email exchange between
10   Special AUSA Quealy and me.

11   13. The same day, October 27, 2025, I learned, independently, that complaining
12   witness FPS Inspector Z.C. has a criminal history including:

13   - a June 17, 2021 conviction for harassment in violation of Pennsylvania Statute §
14        18.2709(a)(1), which falls within the criminal chapter for Assault;

15   - a August 31, 2014 arrest for disorderly conduct, in violation of Florida Statute §
16        509.143; and

17   - a November 4, 2013 conviction for driving under the influence, in violation of
18        Florida Statute § 316193(1).

19   14. Additionally, on October 28, 2025, I learned that Inspector Z.C. lied to the
20   government concerning his criminal history. In the matter of *United States v. Ashliegh*
21   *Brown*, Case No. 2:25-cr-00701-FMO, the government filed a non-opposition to Ms.
22   Brown's motion to compel the complete personnel files of the involved officers,
23   including Inspector Z.C. (Docket 87), and a declaration by Assistant United States
24   Attorney Clifford Mpare in support thereof. Mr. Mpare's declaration states:

25   - On or about September 30, 2025, Mr. Mpare's "colleagues at the USAO" asked
26        Inspector Z.C. "candid questions" in anticipation of calling him at trial."
27        Inspector Z.C. disclosed his 2013 DUI conviction and his 2014 arrest for
28        disorderly conduct only.

---

**DEFENDANT JONATHAN REDONDO-ROSALES' MOTION TO COMPEL BRADY DISCOVERY**

- On October 14, 2025, the government filed a declaration, pursuant to Judge Olguin's Order, stating that the government had complied with its *Henthorn* obligations and had no information to disclose.

- On October 26, 2025, Mr. Mpare's colleagues spoke with Inspector Z.C. who confirmed that the information relating to the 2021 assault conviction "appeared to refer to him."

- The FPS Attorney, Cecelia Green, claims that FPS had no knowledge of Inspector Z.C.'s 2021 assault conviction and hence did not disclose it.

Attached here as Exhibit E is a true and correct copy of the Declaration of Mpare, attached to the government's non-opposition to Ms. Brown's motion to compel complete personnel records in Case No. 2:25-cr-00701-FMO.

15. Based on AUSA's Mpare's declaration, it appears that, in addition to lying to unidentified individuals at the USAO during trial preparation, Inspector Z.C. concealed his criminal record from DHS and FPS when seeking employment and during the investigation of the Ashleigh Brown matter.

16. Accordingly, on October 30, 2025, I sent an email following up on the October 27, 2025 request that the government explain the steps taken to verify that the government did not have any information to disclose pursuant to *Brady* or *Henthorn*, including misconduct and acts of moral turpitude. The government responded that it would take several days to respond. Attached here as Exhibit F is a true and correct copy of the October 30, 2025 email exchange.

17. On November 5, 2025, Special AUSA Quealy emailed me that, since informing the defense of the lack of *Henthorn* materials, he learned that Inspector Z.C. has a criminal record, that the government no longer intends to call Inspector Z.C. as a witness, and the government would be "providing a more detailed response to [defense's] outstanding questions later today." Attached here as Exhibit G is true and correct copy of Special AUSA Quealy's November 5, 2025 email.

18. The same day, Special AUSA Quealy sent an email stating the government will continue to comply with its obligations under *Giglio/Henthorn* and *Brady.* Attached here as Exhibit H is a true and correct copy of Special AUSA's Quealy's second email of November 5, 2025.

19. On November 5, 2025, I responded that the defense continued to seek production of prior complaints against all Inspectors involved in the incident as well as use of force reports filed. Additionally, I inquired whether Inspector Z.C. had disclosed his criminal record to DHS.  On November 6, 2025, Special AUSA Quealy responded, "We have nothing more to say than what has been disclosed in the public record in United States v. Ashleigh Brown, 2:25-cr-00701, Dkt. 87."  Attached here as Exhibit I is a true and correct copy of my November 5, 2025 to November 6, 2025 email exchanges with Special AUSA Quealy.

20. The government is well aware of the defense's position in this case: that Inspectors Z.C., Eric Murberg, and William Terpstra were not acting within their lawful duties and used excessive force, and, after the fact, accused Mr. Redondo-Rosales of assault in order to justify their misconduct.

21. The fact that Inspector Z.C. lied to the USAO and concealed his criminal history from his employer, FPS, is relevant to his credibility.  Accordingly, on November 6, 2025, in addition to the materials requested in defense counsel's October 23, 2025 email, defense counsel requested the personnel files of Inspectors Z.C., Eric Murberg, William Terpstra; the names of the "colleagues" referenced in AUSA Mpare's declaration; and information concerning any federal agents to whom Inspector Z.C. misrepresented his criminal history, including the agent whose affidavit was attached to the Complaint in this matter, Agent Thomas Smith.  This email is included in Exhibit I, the November 5 to 6, 2025 communications between Special AUSA Quealy and me.

22. The government has not produced responsive materials and maintains that is has complied with its *Brady* and *Henthorn* obligations.

23. On December 30, 2025, I emailed Special AUSA Quealy to meet and confer concerning outstanding discovery. The Government reiterated that they have complied with discovery obligations. Attached here as Exhibit J is a true and correct copy of my December 30, 2025 email exchange with Special AUSA Quealy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 8th day of January 2026, at Beverly Hills, California.

_____
/s/
KATHERINE McBROOM