1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

UNITED STATES OF AMERICA,  )  Case No. CR 25-00679-CV
                           )
      Plaintiff,           )  Los Angeles, California
                           )  Monday, February 9, 2026
          v.               )  10:27 A.M. to 11:00 A.M.
                           )  11:41 A.M. to 11:46 A.M.
JONATHON REDONDO-ROSALES,  )
                           )
      Defendant.           )
_____)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE


Appearances:              See Page 2

Deputy Clerk:             Jessica Cortes

Court Reporter:           Recorded; CourtSmart

Transcription Service:    JAMS Certified Transcription
                          16000 Ventura Boulevard #1010
                          Encino, California  91436
                          (661) 609-4528

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

APPEARANCES:


For the Plaintiff:          United States Attorney's Office
                            Central District of California
                            Criminal Division
                            By:  ROBERT QUEALY
                            312 North Spring Street, 12th Floor
                            Los Angeles, California  90012
                            (213) 894-6874
                            robert.quealy@usdoj.gov

                            United States Attorney's Office
                            Central District of California
                            Criminal Division
                            By:  THI HOANG HO
                            312 North Spring Street, 11th Floor
                            Los Angeles, California  90012
                            (213) 894-0596
                            thi.ho@usdoj.gov


For the Defendant:          McBroom Law, P.C.
                            By:  KATHERINE MC BROOM
                            242 26th Street, Unit C
                            Santa Monica, California  90402
                            (310) 666-5198
                            kmcbroom@mcbroomlegal.com

LOS ANGELES, CALIFORNIA, MONDAY, FEBRUARY 9, 2026, 10:27 A.M.

THE CLERK:  -- -00679-CV, *United States of America v. Jonathon Redondo-Rosales.*

Counsel, please state your appearances.

ROBERT K. QUEALY:  Good morning, Your Honor. Special Assistant United States Attorney Robert Quealy for the United States.

THI HOANG HO:  And, good morning, Your Honor. Thi Ho also on behalf of the United States.

THE COURT:  Good morning to you both.

KATHERINE MC BROOM:  Good morning, Your Honor. Katherine McBroom on behalf of Mr. Redondo-Rosales, who is present before the Court out of custody.

THE COURT:  Good morning to you both.

THE DEFENDANT:  Good morning.

THE COURT:  So we're here to address the Government's motion to dismiss the Information without prejudice pursuant to Rule 48(a).  Defendant opposes the motion.  My understanding from the Government's motion is that the parties agreed that the Information should be dismissed and that the disagreement was as to whether the Information should be dismissed with or without prejudice; is that correct?

MS. MC BROOM:  Yes.

THE COURT:  Defense counsel's position is

essentially that a dismissal without prejudice would be inappropriate and that defendant would rather proceed to trial than have the charges be dismissed without prejudice; is that correct?

MS. MC BROOM:  Yes.  That's correct.

THE COURT:  And I admit that I was surprised by the Government's motion to dismiss given that the case seemed to be trial ready.  From the final pretrial conference two weeks ago, my staff and I have spent significant time working on the case and getting it ready for trial.  I had a 25-page omnibus order drafted regarding all of the pretrial motions in limine, and I was going to issue that order on Friday right before the Government's motion to dismiss came in.  So obviously the Court -- the courts are congested.  I have nearly 400 pending cases before me, including, you know, several other matters that have been deprioritized to get ready for this trial.

It's always frustrating when a case is settled or dismissed right before trial, but the Government's position seems to be that this matter would be left open indefinitely through the statute of limitations period and that we would have to go through this whole process all over again.  So I'd like to hear from counsel for both parties today.

Counsel for the Government, this is your motion; so I'd like to hear from you first why dismiss this case now,

and why is the Government insisting that it be without prejudice?

MR. QUEALY:  Again, may I take the lectern?

THE COURT:  Yes.

MR. QUEALY:  And, Your Honor, before I address the motion, I do understand the Court's frustration with preparing at the last minute, and I do understand that you were assigned this, also, very soon, the last minute.  So, you know, the Government does appreciate the Court's efforts that were taken in such a quick time.

The Government's position is that dismissal should be made with prejudice only in situations where considerations by the prosecution are clearly contrary to the public interest or where dismissal without prejudice would be tantamount to prosecutorial harassment.  And this is the standard articulated by the Ninth Circuit, *United States v. Wallace*, which was also cited in the defense's brief.  The Ninth Circuit has recognized that the interests of justice are based on broad considerations.

And I would first just address the claims by defense as to why the defense position is that this dismissal is sought not in good faith, and the first is the allegation that the Government seeks to dismiss this simply to be refiled when I return from leave that has already been preplanned.  The information included in the Government's

notice for the speedy trial clock was intended for the Court's awareness.  At the pretrial conference the Court had asked which Government counsel would be representing the Government in its prosecution.  The conflicts were included so that the Court would be made aware that according to certain scheduling the case may need to be reassigned and that a different prosecutor would be handling the case.

Now, as to that point, co-counsel is available on the trial date that was set by this Court, and if the Government wished to continue with prosecution, they could and would staff this case.  I am a line prosecutor.  As much as I wish I had the authority, I do not have the authority to dismiss cases and to refile as to my convenience.

As to the allegations that dismissal without prejudice is sought to gain a tactical advantage, the defense cites two primary considerations.  The first is that jury instructions were amended to include the appropriate instruction for self-defense.  As the Court pointed out, under the theory of the case the incorrect instruction was included.  This was included in a joint proposed jury instruction that had been reviewed both -- by both Government counsel and the defense counsel, and it was not indicated that it was in opposition, and in fact, the Government did acknowledge that the Court was correct and that it would be amended accordingly.

As to the motions being ruled on and the Government being aware of the, quote-unquote, "weaknesses" of its case, as the Court has just indicated, those motions had not been ruled on, and there were no tentative rulings to give an indication to the Government as to where the Court would side on these issues.

THE COURT:  Well, certainly some of my questions would lead you to guess where the Court might be going; correct?

MR. QUEALY:  Your Honor, the nature of the questions, as the Government understood it, was that, as you were new to the case, to gather more information to make a considered decision.

As to the allegation that the Government was trying to avoid *Brady*, as is indicated in both defense's motion to compel and in the order by Judge Staton regarding the timing of the motion, the Government has been open about its position on certain information, was open early when defense first requested it, and it was defense that had ample opportunity to file this motion well in advance of the current trial date.

Additionally, as evidence of the Government's good faith, defense counsel did make an eleventh-hour request for additional discovery, information the morning of the pretrial conference based in part on what appears to be the

Information and Affidavit that was turned over as part of initial discovery.  The Government has made good-faith efforts to comply with that request even while negotiating dismissal in this case and has provided defense with the names of the drivers of the vehicle, as well as who owned the vehicle in question.  And defense had followed up with another request for a viewing.  However, that was then -- defense had already filed the motion to dismiss but the --

THE COURT:  What vehicle are you referring to?  The vehicle that --

MR. QUEALY:  On the morning of the pretrial conference, defense counsel had asked about the Dodge Charger --

THE COURT:  Okay.

MR. QUEALY:  -- that the defendant had stood in front of.

THE COURT:  Okay.

MR. QUEALY:  Now, as to -- oh, sorry.

To the tactical advantage issue of the defense saying that we have somehow gained knowledge of defense's theory and wish to dismiss in order to refile later, the theory presented at the pretrial conference does not differ from the theory that was presented in defense's motions, which have been on file for months.  So it's the Government's position that no new information about defense strategy was

presented during the pretrial conference.

And again, with the discovery issues, defense counsel indicated at the pretrial conference that they had not been provided notice of criminal history.  The Government stated and has included in the Information that that information was provided.  Immediately after the pretrial conference, I called defense counsel and left a message wanting to make sure that defense had all discovery that we have a record of providing.  That call was never returned, and that discussion was never had.

And then, finally, the defense argues that the dismissal for the state prosecution is merely a pretext to cover up what would be essentially prosecutorial harassment. However, the relevance of my unavailability is that the Government and the Court's continuance in this case is simply that the Government, as it does in many stages of the litigation, reviews the status of the case.

Prior to the Court's continuance, this case was continued three times.  The third continuance at defense's request due to trial conflicts was for two months from the previous trial date and six months from the time of the defendant's arrest.  The Government did not object but was concerned about the length of time that this trial was being continued for, particularly in light of defendant's custody status.

Defense argues that the Government detained the defendant and could have released him at any time.  However, while the Government can file a motion for detention and can argue for detention, the Government does not detain people. That determination is made by a magistrate judge, and it was made in this case based on records that have been provided to the Court through co-counsel's sealed declaration of defendant's concerning criminal history and criminal history characteristics that suggested a history of violating protective orders, the fact that there was an active protective order at the time of his arrest, and that there was an active arrest warrant.  Now, defendant has not provided proposed bond conditions that would have addressed those concerns, and a magistrate judge did order the defendant detained as a result.

THE COURT:  And that was because the Government raised the alleged parole violation; is that correct?

MR. QUEALY:  Your Honor, yes.  It came up in the pretrial -- typically a magistrate bond detention hearing, there is a report prepared by Pretrial Services that flags the characteristics of the defendant, and in this case there were concerns that were raised which were not adequately addressed, from the Government's perspective, by defense counsel.

In addition, the witnesses -- both the Government's

witness and several potential witnesses that defense has provided subpoenas for and intends to call -- which the Government, again, has acted in good faith to ensure their availability -- are located outside this jurisdiction, and as such, they must arrange travel in advance.

Now, while the Government has a federal interest in this case, it is the Government's position that there is an equally compelling state interest as well and that the state warrant, from our records, issues from December of 2024.  So from the second -- from the Court's continuance of the trial -- which two weeks -- no -- three weeks from the trial date -- the Government in looking at --

THE COURT:  Sorry.  So there -- as you said, there were several continuances --

MR. QUEALY:  Yes, Your Honor.  And we were --

THE COURT:  -- granted by the prior judge.  So which continuance are you referring to?

MR. QUEALY:  Sorry, Your Honor.  So there were several continuances, and the third was already of concern for the Government given how long of a continuance that was, and so then in light of the additional continuance for almost three weeks --

THE COURT:  The continuance of this trial?

MR. QUEALY:  This Court.

THE COURT:  I continued the trial for two weeks.

MR. QUEALY:  Yes, Your Honor.  Apologize.  Yes. Two weeks.

The Government in looking at all of these factors -- which, again, as the Ninth Circuit acknowledges that the factors in the interest of justice are quite broad -- determined that it is in the interest of justice to dismiss the case without prejudice so that the state matter may proceed.

Now, the Government currently has no intention to refile the charges.  And to sort of address your question as to why we seek without prejudice to leave the statute of limitations open, Your Honor, the Government's position is not that this case should be without prejudice such that the statute of limitations should be left open.  The position of the Government is that to dismiss with prejudice is a remedy to be reserved for only those situations where the reasons sought for dismissal are contrary to public interest or that there is evidence that the Government is going to be engaged in prosecutorial harassment, such as dismissing to immediately refile, dismissing to avoid requirements of the speedy trial clock, dismissing to supersede with charges that were already known before the filing of the original indictment.

And so for those reasons, that's why the Government asks that this be dismissed without prejudice.

THE COURT:  Did the Government raise the alleged parole violation at any point with defense counsel after the September 3, 2025, reconsideration hearing?

MR. QUEALY:  Your Honor, when defense indicated that they wanted to file for bond reconsideration again, the Government did raise the issue.  The Government raised the issue specifically to provide what issues needed to be addressed by a bond package in order to have a position on whether or not the defendant could be released on bond.

THE COURT:  And what prompted the Government at this time to raise this as a reason for dismissing the case -- just on Friday?

MR. QUEALY:  Your Honor, because the case, again, would need to be reassigned, the Government as a whole took a look at the case.

THE COURT:  Well, why would it need to be reassigned?  You have Ms. Ho here.  She's your co-counsel. She can try the case.

MR. QUEALY:  Well, that is correct, Your Honor.  So because the case potentially might need reassignment and was continued, right, that was an opportunity for the Government to look at this case as a whole, the amount of time that has elapsed, and that the interest of a state that did exist and we have been aware of and conclude that it was in the interest of justice to dismiss this case.

THE COURT:  Defense counsel provided authority that suggests the Court should dismiss this action with prejudice. Is it the Government's position that the Court does not have the authority to dismiss this case with prejudice?

MR. QUEALY:  Your Honor, that is entirely within the Court's discretion.  The Government acknowledges that. It is the Government's position that the Court has discretion to dismiss a matter with prejudice, however, that that should be reserved for the specific conduct that I have referred to. But, yes, to your question, you absolutely have the authority to dismiss with prejudice.

THE COURT:  Ms. McBroom, can you please remove your glasses from your -- top of your head.  It keeps reflecting --

MS. MC BROOM:  Sorry.

THE COURT:  -- and I keep seeing flashes of light.

MS. MC BROOM:  Sorry.

THE COURT:  Thank you.  Thank you.  No problem.

So does the Government accept that the Court has a duty to examine the reasons for dismissing without prejudice when the defendant opposes the motion to dismiss?

MR. QUEALY:  Yes, Your Honor.

THE COURT:  The Government would accept that if the Court determines it necessary to protect a defendant from harassment, to maintain the integrity of the judicial system,

or where a dismissal without prejudice would be contrary to the public interest that the Court may dismiss with prejudice; correct?

MR. QUEALY:  Yes.  That is correct, Your Honor.

THE COURT:  So can you please address defendant's position that the Government is seeking to dismiss this action to gain a tactical advantage.

MR. QUEALY:  Yes, Your Honor.  As I stated earlier, the tactical advantages cited here that somehow we are -- that the Court was inclined to grant a jury instruction that we opposed is not true -- we actually agreed with the Court as to that jury instruction; that we somehow have lost evidence due to rulings by this Court when the Court has not ruled on the motions or indicated its tentative rulings; or that we have somehow become aware of defense's theory when the theory has been the same since the original motion to oppose Government's motion in limine to exclude arguments on self-defense and evidence of the post-arrest conduct.

THE COURT:  What was the basis for your statement in the February 5, 2025, email to Ms. McBroom that you were concerned that the defendant was using the misdemeanor proceedings to "shield" himself from the state court proceedings?

MR. QUEALY:  Your Honor, the Government had proposed -- what is atypical of cases is that offers get

better as time moves on.  The Government had proposed --

THE COURT:  What is "typical"?

MR. QUEALY:  What is "atypical."

THE COURT:  Oh.  Thank you.  Yes.  Okay.

MR. QUEALY:  That concern was communicated, through me, from the Government because of the -- there had been an extension for a Class D misdemeanor, and then the extension for -- of an offer to -- essentially diversion, and then to just the dismissal without prejudice.  And that, coupled with the longer continuance beforehand, the Government was concerned that the defendant might be trying to avoid the state.

THE COURT:  Okay.  You said you don't have the discretion to make the decision to dismiss with or without prejudice.  Who makes the ultimate decision?  Who made the decision in this case?

MR. QUEALY:  From -- the approval was granted from the first assistant United States attorney.

THE COURT:  Who's that person?

MR. QUEALY:  Bill Essayli.

THE COURT:  Oh.  Okay.  Thank you.  Yeah.

Okay.  I may come back to you, but I'd like to hear now from Ms. McBroom.

MR. QUEALY:  Yes, Your Honor.

MS. MC BROOM:  Good morning.

THE COURT:  Good morning.  I want to hear your argument, Ms. McBroom, but I want you to start with responding to the Government's statement that dismissing the Information without prejudice would be extreme.

MS. MC BROOM:  I think this is all about timing. The case -- I think it's *BCG*, which is cited in the Government's brief, is a good -- is an example of a good-faith, timely dismissal without prejudice.  That's a case where the Government files an information while the grand jury is out because of COVID, and they're running out of time, the statute of limitations is going to run, so right away they dismiss without prejudice so that, when the grand jury reconvenes, they can pursue the case.  That makes sense. That's at the beginning of the case.

There's a couple things here.  There is a -- as you can see, very much a public interest in this trial, particularly what's going on right now in the -- our community and throughout the country.  I find it -- you know, look.  The Court asked the Government to file under-seal personnel records of officers involved in this detention in what is a beating, which may or may not have been released to me depending on the Court's ruling.  So the timing of the motion is interesting at the very least.

THE COURT:  Well, I don't think the Court ordered that.

MS. MC BROOM:  I think there was under-seal summary of acts of misconduct by law enforcement officers, where the Court had me file a supplemental brief asking what further information I needed, and it summarized all the misconduct that the Government is in possession of and hasn't yet produced to me for officers I intend to call.  They don't intend to call the complaining witness in this case, I do, and that's because that person lied.

From my perspective, this is a case where law enforcement has a choice.  They can either commit perjury, or they can revise their statements to comport with a video.  Either scenario is bad for them.  That's why the Government should dismiss this case.  To say that my client is "shielding" -- I don't even understand -- it doesn't make sense to me how someone is "shielding" -- they're using a federal detention to "shield" themselves from a parole violation.

I'll tell you.  I called the parole officer.  I've written her.  So has my client.  So has my client's sister and mother.  Not one response from the parole agent.  This is not of the utmost importance to officer -- Agent Campbell in San Diego.  So what my client has been trying to do since the initial reconsideration hearing, he's -- he requested to be released so he could go to Chula Vista and meet with Agent Campbell and try to get this San Diego superior court

--

THE COURT:  Hold on one second.

(Pause.)

THE COURT:  Okay.  Go ahead.

MS. MC BROOM:  -- try to get the San Diego superior court to transfer his parole back to where he actually lives.

I don't even understand that argument, but that is the basis stated for the dismissal here when there is a public interest in this trial going now.  We are ready.  We had the pretrial conference.  Subpoenas have been served.  I had, as the Government knows, given them notice that I was seeking ex parte relief to serve the person driving the car who hit my client, who is in San Diego, to serve outside the 100-mile radius and then had intended to do that on an ex parte basis.  We were ready to go.  By virtue of doing this so late in the game, they're privy to the Court's inquiries concerning pretrial motions.  They've got a *Brady* motion pending with some information that is not great for these law enforcement officers should they decide to testify contrary to their initial perjured statements.

And I don't -- what else could it be but dismissing and refiling?  I'm -- what I'm hearing is there's an order from above that "This is what we're doing," that "We're not going to seek dismissal with prejudice," for no good reason. The only reason for it would be tactical advantage and to

refile it when more convenient for the Government.  I heard a lot of talk about having to reassign.  That's not a good-faith basis.  When you've got a -- especially a defendant sitting in custody for six months -- six months.  And the last continuance is because I was in trial for two months in Compton.

So this concern about parole was well known in -- August 5th.  That's at the initial appearance the parole issue came up.  It came up again at the motion for reconsideration, and it was never mentioned again by the Government until I received an email from AUSA Quealy.

The public interest isn't protected with a without-prejudice dismissal, my client is subject to further harassment on a case that I don't think is meritorious, and I think just -- the Court's duty to protect judicial integrity and the integrity of the system, particularly right now in this climate, is really important.  I do not think it is an extreme remedy at this late in the game, days before trial.

THE COURT:  And what are the cases that you -- I did read your brief, but what are the cases that you rely on?

MS. MC BROOM:  Well, the one I find distinguishable is that *BCG* case.  That is an example, to me, of a good-faith motion to dismiss without prejudice.  There's a problem with the grand jury.  We're at the beginning of the case.  We've not done discovery.  We've not argued motions.  We've not

subpoenaed witnesses.  We've not heard, you know, lengthy argument from both sides.  There's not a *Brady* motion pending.  I don't think that the Government can rely on that case.  And unfortunately the only -- I mean, this case is directly on point -- *Erickson* --

THE COURT:  Well, the Government did rely on that case.

MS. MC BROOM:  Well, *Erickson*, I mean.

THE COURT:  Okay.

MS. MC BROOM:  *Erickson* is a district court case. It's not in this district, but it's a 2024 case.  It's *U.S. v. Erickson*.  It's directly on point.  The court asked the Government whether the prosecution will receive an unfair tactical advantage given that the prosecution waited to move for dismissal until Erickson had already explained his defense.  He said (reading): A dismissal without prejudice would allow the Government to better prepare for Erickson's defenses and cure any evidentiary deficiencies.  And then it goes on to say (reading):  The district court maintains a duty to protect criminal defendants from harassment and maintain the integrity of this -- of the judicial system.  By waiting until the conclusion of the status conference to make the motion, the Government was given the opportunity to hear his anticipated defenses and address any potential holes in its case-in-chief.

That's directly analogous to this case.  Had the parole thing really been a concern, it would have been raised on August 5th.  At the latest, it would have been raised at the motion for reconsideration.  It wasn't.

THE COURT:  Mr. Quealy, have you been contacted or your office been contacted recently by this parole officer?  What's the person's name?

MS. MC BROOM:  Campbell.

MR. QUEALY:  No, Your Honor.  We obtained records through a probation officer.  I don't believe it is the one assigned through the case agent.  Initially we requested records related to the violations.  There was a previous one and then the one for the current warrant.  And I have spoken with the district -- a deputy district attorney just to verify that it is in fact an active warrant and that he had a parole issue outstanding, but beyond that, we have not heard from the parole office.

THE COURT:  In your motion -- the Government's motion, there was no stated concern about the prior continuances or the reassignment of the case.  The only stated reason for the dismissal was the state court proceedings.  Why omit those reasons?

MR. QUEALY:  Your Honor, the -- to your point, what I discussed here in the hearing today are the considerations as to why the state interest was judged to be in the interest

greater than the federal interests such that we filed for the motion to dismiss.  Those weren't included because those were things that were considered in weighing, as time goes on, why we would dismiss to let the state proceed on its own interest.

THE COURT:  Okay.  So maybe I missed it then, or I'm not understanding.  The U.S. Attorney's Office was well aware of the parole hold -- the parole violation and the parole hold on August 5th at the first bond detention hearing; correct?

MR. QUEALY:  Yes.

THE COURT:  Okay.  At that time and since that time -- for six months -- while Mr. Redondo-Rosales was in custody, the Government never determined that the state's interests were greater than your interest to prosecute this case until just very recently.  What changed the Office's -- your Office's determination about the fact that it's your belief that the state interests are greater than your interest in prosecuting this case, especially when we would have tried the case in one day on February 17th?

MR. QUEALY:  Your Honor, I'm not necessarily optimistic the case would have been tried in one day.

THE COURT:  You had one witness -- you told me you had one witness.

MR. QUEALY:  Yes, Your Honor.

THE COURT:  And I do jury selection very quickly. So I think we would have been done in a day, maybe two.

MR. QUEALY:  But -- so, as indicated, the Government was already concerned about how much time was going up to the February 3rd point, and the point of reconsideration by the Government was the continuance -- the additional two weeks continued by this Court.  Now, I know that this was filed on Friday.  However, we reached out very early with defense counsel to discuss a possible dismissal as those discussions and approvals were ongoing.

THE COURT:  So the case was continued for four or five months, multiple continuances, but then, when this Court got the case and continued it for two weeks so that I could draft my 25-page decision on all of your in limine motions, your office thought that a two-week delay was too much time and that you would rather turn the case over to the state for them to move on the parole hold first?

MR. QUEALY:  Yes, Your Honor.

THE COURT:  Have you discussed Ms. McBroom's opposition brief with your supervisors?

MR. QUEALY:  Your Honor, the brief -- I've discussed the stated objections that she had before we filed the motion with them.

THE COURT:  Okay.  She filed her brief on Friday, and then the Court set this hearing for today.  Have you

talked with your supervisors about whether or not they would reconsider and agree to the filing of the motion to dismiss with prejudice.

MR. QUEALY:  No, Your Honor.

THE COURT:  Okay.  I'm going to give you 15 minutes to do that, and then we'll come back at 11:15, and I'll ask you whether your Office has reconsidered -- well, your Office will reconsider, and I'll ask whether or not they've changed their minds, and then, if not, then I'll take the matter under submission and issue a written ruling later today.

MR. QUEALY:  Understood, Your Honor.  Thank you.

THE COURT:  Thank you.

THE CLERK:  All rise.

(Recess from 11:00 a.m. to 11:41 a.m.)


AFTER RECESS

THE COURT:  We're back on the record in *United States v. Jonathon Redondo-Rosales*, Case No. CR 25-679.

Okay.  Mr. Quealy?

MR. QUEALY:  Yes, Your Honor.

I, per the request of the Court, brought this issue back up to my supervisors, including to the first assistant United States attorney.  It is the -- the Office stands by its request to dismiss without prejudice, and it is the Office's position that there is no bad faith to warrant

dismissal with prejudice, that irrespective, the defendant's speculative attacks on the Government's reasoning which was stated in its motion that the -- does not negate the Office's ability to make decisions on how it expends its resources.

THE COURT:  Okay.

MR. QUEALY:  The Office further states that with respect to the timing of this motion to dismiss that the Office was prepared to litigate this despite its efforts, also, to resolve this case pretrial and that there were multiple continuances agreed to without objection by the state despite its impact on the state proceeding but that it's the Office's position that as time drags on that it is time for the state to handle this matter.

THE COURT:  Okay.  Thank you.

Ms. McBroom, do you have any other comments for the record?

MS. MC BROOM:  Just that given the eleventh-hour motion to dismiss and the reason for that motion, which is six-months old and is only being raised now, speaks volumes as to what's really going on here.  There is a public interest in moving forward, and the Court may exercise its discretion in granting a dismissal with prejudice to prevent the harassment of my client in dismissing and recharging.

Thank you.

THE COURT:  Thank you.

And, Mr. Quealy, you mentioned that your Office's position was that there's no bad faith, but is it your understanding that there has to be bad faith on behalf of the Government for a with-prejudice dismissal, or can the Court focus on the prejudice to the defendant?

MR. QUEALY:  Your Honor, it's the Government's position that, as articulated by the Ninth Circuit, the standard in dismissing with prejudice should focus on bad faith, such as considerations contrary to the public interest or that it would result in the harassment of the defendant.

As to prejudice to the defendant, I'm not sure exactly what considerations the Court would -- referring to. To the extent that it would be prejudice to the defendant's case such that the prosecution seeks to dismiss for a tactical advantage, then, yes, that is something that the Court would consider, but it is the Government's position that it should be within the categories as enumerated in *United States v. Wallace*.

THE COURT:  Okay.  Anything further from either side?

MR. QUEALY:  Your Honor, I do want to state one thing and that -- as defense has pointed out that the state has -- the state issue has existed since the start of the case.  What I would -- the Government --

THE COURT:  The parole hold, you mean?

MR. QUEALY:  Yes, Your Honor.

THE COURT:  Uh-huh.

MR. QUEALY:  The Government would like to make clear that the state interest has existed, but as time continues, the state interest becomes greater relative to the federal interest because of the age of the state case. That's the Government's position.

THE COURT:  Is the Government saying that there's some sort of statute of limitations on the parole violation? Are they coming up against the speedy trial clock over on the state side?

MR. QUEALY:  No, Your Honor.  Just that the time that this continues does deprive the state of its own interests.

THE COURT:  And if Mr. Redondo-Rosales were found -- we went to trial on February 17 and he were found guilty and he was sentenced to spend more time in prison that would have also made the state wait even longer for their prosecution; right?

MR. QUEALY:  Unless he could be writ over, Your Honor, yes, that is correct.

THE COURT:  Okay.  Anything further?

MS. MC BROOM:  No, Your Honor.

MR. QUEALY:  No, Your Honor.

THE COURT:  Okay.  Thank you, counsel.  The matter

is concluded.

THE CLERK:  All rise.

(Proceedings adjourned at 11:46 a.m.)

///

///

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Julie Messa                    February 24, 2026
Julie Messa, CET**D-403            Date
Transcriber